UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LASONA MCKINNEY,<br><br>              Plaintiff,<br><br>   v.<br><br>CHICAGO TRANSIT AUTHORITY,<br><br>              Defendant. | Case No. 20 C 6093<br><br>Magistrate Judge Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Petition for Award of Fees, Non-taxable Expenses, and Taxable Costs ("Fee Petition") pursuant to 42 U.S.C. § 2000e-5. McKinney initiated this lawsuit against his current employer, Chicago Transit Authority ("CTA"), for violating Title VII of the Civil Rights Act of 1964 ("Title VII"). After a five-day jury trial, the jury returned a verdict in favor of McKinney in the amount of $99,000.00 in compensatory damages. *See* Doc. 160. As the prevailing party, McKinney filed the instant Fee Petition seeking an award of $342,068.00 in fees for 525.4 hours of work performed through the jury verdict, at a rate of $650/hour, an award of $558.00 in non-taxable expenses, and an award of $6,717.80 in taxable costs. For the reasons explained below, the Fee Petition [178] is granted in part and denied in part.

**DISCUSSION**

In Title VII actions, "a court, in its discretion, may allow the prevailing party, ... a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k). Federal Rule of Civil Procedure 54(d)(1) allows a prevailing party to recover costs other than attorneys' fees unless a federal statute, federal rule, or court order states otherwise. As the

prevailing plaintiff, McKinney may recover his reasonable attorney's fees and costs. A fee analysis begins with a "lodestar" calculation, calculated as "the number of hours reasonably expended on the litigation multiplied by a reasonably hourly rate." *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party requesting the fee has the burden of proving the reasonableness of both the hourly rate and hours expended. *See Hensley*, 461 U.S. at 437.

CTA objects to McKinney's proposed fee award for three reasons. First, CTA alleges that McKinney's counsel should be awarded a rate of $550/hour, not $650/hour. Second, CTA claims that because McKinney's counsel violated various discovery rules and court orders, McKinney's Fee Petition should be denied or reduced. Third, CTA argues that because McKinney's counsel failed to include any non-taxable expense receipt, his expenses should be denied.[1]

### A. $650/Hour is a Reasonable Hourly Rate for Work Post-Dating January 2023

First, McKinney claims that $650/hour is an appropriate rate for his attorney's time. CTA responds that there is no compelling reason to disturb McKinney's counsel's previously awarded rate of $550/hour in similar cases prior to 2023. The Court uses the lodestar method to calculate a reasonable fee, even where the attorney has a contingency fee agreement. *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011). The first step in determining the lodestar is

---

[1] In response to McKinney's Fee Petition, CTA has not addressed many of the arguments that it asserted in the parties' Local Rule 54.3(e) Statement. *See generally* Doc.178-2. In particular, CTA no longer asserts the following: (1) McKinney's fees should be reduced because of McKinney's counsel's estimate of possible fees if the case went to trial; (2) McKinney's fees should be reduced to one-third of what he sought because McKinney was only successful on one claim at trial and McKinney was only awarded $99,000 when he sought $300,000; and (3) no fees should be paid for time spent on McKinney's overtime claim. *See generally* Doc. 182. Because CTA has not responded to McKinney's arguments regarding CTA's initial objections, CTA forfeits these initial objections. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in [a] response...."); *see also Mortera v. Target Corp.*, 2019 WL 1532960, at *4 (N.D. Ill. Apr. 9, 2019) (holding plaintiff forfeited objection to costs by not challenging defendant's claimed amount).

to assess the reasonableness of the attorney's hourly rates. *See Hensley*, 461 U.S. at 433. The plaintiff bears the burden of showing that the proposed rate is reasonable. *Id*. A reasonable hourly rate is "one that is derived from the market rate for the services rendered." *Pickett*, 664 F.3d at 640 (internal quotation marks omitted). The attorney's "actual billing rate for comparable work is presumptively appropriate to use as the market rate." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir.1996) (*citing Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir.1993)). However, the Seventh Circuit has recognized the difficulty of determining the hourly rate of an attorney who uses contingent fee agreements and has advised district courts to rely on the "next best evidence," namely "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 555 (7th Cir.1999). As between the two "next-best" alternatives, the Seventh Circuit has "indicated a preference for third party affidavits that attest to the billing rates of comparable attorneys." *Pickett*, 664 F.3d at 640. Once an attorney provides evidence of his billing rate, the burden shifts to the defendant to present evidence establishing "a good reason why a lower rate is essential." *People Who Care*, 90 F.3d at 1313.

By way of background, McKinney's counsel graduated from Yale Law School in 1981. *See*. Doc. 178-1 at 2. After law school, he joined the law firm now known as Miner, Barnhill & Garland, where he became a partner in 1998. *Id*. at 3. During his twenty-five years at the Miner firm, McKinney's counsel represented plaintiffs in federal and state litigation in employment discrimination, wage and hour, personal injury, medical malpractice, and First Amendment cases. *Id*. In 2008, McKinney's counsel became General Counsel for ACORN Housing Corporation (later known as Affordable Housing Centers of America), where he was responsible for legal issues

for seventeen offices across the country. *Id* at 5. In 2011, he joined the Chicago Lawyers' Committee for Civil Rights as head of the Employment Opportunity Project, where he pursued high-impact civil rights litigation. *Id*. at 6. In 2016, McKinney's counsel began his solo practice, concentrating on employment discrimination and wage and hour cases. *Id*. at 7. Since then, he has litigated numerous cases in federal court, including an appeal at the Seventh Circuit. *Id*. at 7-8.

The Court begins its inquiry with McKinney's counsel's actual billing rate for comparable legal work. Here, the majority of McKinney's counsel's practice involves working for a contingent fee. *See* Doc. 178-1 at 8. However, McKinney's counsel explained that he increased his rate from $550/hour to $650/hour in January of 2023 to reflect current rates and because he had not increased his rate in at least eight years. *Id.* In addition, McKinney's counsel stated that he had one client in 2023 who paid his new hourly fee of $650/hour. *Id*. In that case, McKinney's counsel negotiated an employment severance agreement and advised on whether to bring an employment ADEA discrimination case if that negotiation was unsuccessful. *Id*. But McKinney's counsel has not provided billing records or support to demonstrate how much time he spent on the matter and whether he acted as a litigator in that case. *See, e.g.*, *Gracia v. Sigmatron Int'l, Inc.*, 2016 WL 6892861, at *3 (N.D. Ill. Nov. 23, 2016) (relying on billing records to conclude prior work was similar enough to support the proposed market rate). As a result, the Court cannot determine if McKinney's counsel's role in the ADEA employment discrimination case is similar to the legal work in the case before this Court.

Next, the Court turns to evidence of rates similarly experienced attorneys in the community charge paying clients for comparable work. To support the Fee Petition, McKinney included declarations with relevant rates from four attorneys in the Chicago legal community. *See* 178-4, 178-5, 178-6, 178-7. Mr. Piers is a shareholder and president of a law firm in Chicago. *See* 178-4

4

at 1. He attested that he is responsible for setting his firm's annual hourly billing rates, and at his firm, McKinney's counsel would bill at a rate of $690/hour. *Id.* at 1- 2. Mr. Piers stated that McKinney's counsel's rate is "below the market rate for an attorney of his qualifications and experience." *Id*. at 1. Additionally, Mr. Feldman is a lawyer at a law firm in Chicago with experience in employment discrimination and civil rights cases. *See* 178-5 at 1. He stated that his current regular hourly billing rate is $675/hour, and he is part of his firm's annual review of rates and reviews billing records of law firms in his representation of lawyers and law firms in legal malpractice cases. *Id.* at 1-2. Mr. Feldman concluded that given McKinney's counsel's background and seniority, "if he were at my firm[,] his hourly rate charged to paying clients would likely at least equal mine." *Id*. at 3. Moreover, Mr. Galland is a partner at a Chicago law firm with jury trial and employment discrimination litigation experience. *See* Doc. 178-6 at 1. He explained that McKinney's counsel was previously a partner at his law firm, and McKinney's counsel's "skill, experience, and reputation are easily the equal of mine in the employment field," and his "current standard hourly rate has been above $650 for many years and is presently $680." *Id*. at 1-2, 5. Finally, Mr. Allison is a lawyer and principal at a law firm in Chicago with experience in federal discrimination cases. *See* Doc. 178-7 at 1. He attested that the hourly rate requested "is reasonable and at the lower end of the range of reasonable hourly rates charged and received by lawyers litigating civil rights cases in Chicago with comparable experience and qualifications." *Id*. at 3-4. In the end, all four attorneys concluded that McKinney's counsel's requested rate is a reasonable amount.

      Here, using the "next best evidence," McKinney has shown that attorneys with similar federal employment discrimination litigation experience in Chicago would charge comparable and greater hourly rates than those requested in the Fee Petition. Additionally, the declarants attested

to McKinney's counsel's professional qualifications, legal experience, recognition in the community as an expert in this field, and reasonableness of his requested rate.[2] As a result, McKinney has provided evidentiary support for his counsel's rate. Thus, the burden shifts to CTA to demonstrate that a lower rate is essential. *People Who Care*, 90 F.3d at 1313. In response, CTA asserts (1) that the affidavits McKinney's counsel provided are not helpful; and (2) that McKinney's counsel should be awarded $550/hour for all of his work because that is what he has previously been awarded.

With respect to CTA's first argument, the Court finds the declarations McKinney submitted helpful. The Court recognizes that McKinney's counsel is a solo practitioner compared to the declarants and CTA's counsel. Yet the declarations did not state that McKinney's counsel would be entitled to $650/hour only if he worked at the declarants' law firms. Rather, the declarations explained that $650/hour is a reasonable fee for an individual such as McKinney's counsel based on his qualifications and experience. *See* 178-4 at 1; 178-7 at 3-4. Additionally, McKinney's counsel's Fee Petition demonstrates the efficiency with which he worked. Indeed, CTA "does not complain about the time the Plaintiff's counsel spent throughout the course of litigation in this matter." Doc. 182 at 8. As a solo practitioner, McKinney's counsel successfully brought this case to a jury verdict on his own. In doing so, he completed discovery, depositions, summary judgment briefing, pre-trial motions, a five-day federal jury trial, and post-trial motions. The Court presided over the trial, and McKinney's counsel demonstrated considerable skill and competence in handling this case. Ultimately, McKinney's counsel spent 525.4 hours through the jury verdict

---

[2] McKinney also relies on the Laffey Matrix as evidence that he is justified in requesting $650/hour. The Seventh Circuit has not adopted the Laffey Matrix and has expressed some skepticism about its usefulness outside of Washington, D.C. *See Montanez v. Simon*, 755 F.3d 547, 554 (7th Cir. 2014). The Seventh Circuit instead leaves it "to trial judges to exercise their discretion in evaluating its usefulness in any particular case." *Id*. Here, the Laffey Matrix provides that McKinney's counsel could seek as much as $997/hour.

compared to 1,724.5 hours worked by CTA's legal team—nearly three times the number of hours. *See* 178-3 at 2.

In response, CTA has not put forth any evidence or declarations to support its claim that McKinney's counsel should be paid a lower rate. Instead, CTA asserts that McKinney's counsel has no overhead, and he is entitled to a tax deduction for the portion of his home that he uses as an office. *See* Doc. 182 at 7. But an attorney's decision to operate a low-overhead law practice is not a reason to discount their attorney's fees. *See, e.g.*, *Koski v. Gainer*, 1999 WL 438910, at *2 (N.D. Ill. June 22, 1999) ("This court fails to understand why [counsel] should be punished for keeping her expenses low."). Indeed, as McKinney's counsel explained, he is still responsible for secretarial and paralegal work (which he does not bill for), payment on a mortgage (where his office is located), and payment for bar membership, insurance, and Westlaw access. *See* Doc. 183 at 10-11. Accordingly, CTA has not met its burden to demonstrate why a lower rate should be awarded.

Turning to CTA's second argument, the Court sees no reason to award a lower rate for work post-dating McKinney's counsel's rate increase in January 2023 because he historically charged $550/hour or requested $550/hour in fees. The Seventh Circuit has affirmed cases where a court uses counsel's historical market rates with interest, *see Smith v. Village of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994), and current market rates in multi-year litigation, *see Pickett*, 813 F.3d at 647. Notably, "a current market rate calculation compensates for the delay in payment and simplifies the district court's calculation." *Vega v. Chicago Park Dist.*, 12 F.4th 696, 706 (7th Cir. 2021) (cleaned up). In the present case, McKinney's counsel attested that he increased his rate in January 2023 and has charged one client that rate since he implemented the increase. Moreover, McKinney's counsel has spent nearly three years litigating this case. CTA's reliance on prior rates and requested fees is insufficient to convince this Court to use McKinney's counsel's

7

historical rate instead of his current rate for all of his legal work. *See Fox ex rel. Fox v. Barnes*, 2013 WL 4401802, at *3 (N.D. Ill. Aug. 15, 2013) ("[Hourly fees often increase over time, both because of inflation and because of the increasing skill and reputation of the attorney, suggesting that rates higher than those awarded three years ago are appropriate."). Thus, at the very least, a rate of $650/hour after January 2023 is reasonable.

However, the Court finds that the reasonable hourly rate for the first two years of this case is $550/hour. The attorney's "actual billing rate for comparable work is presumptively appropriate to use as the market rate." *People Who Care*, 90 F.3d at 1310. McKinney's counsel has previously petitioned for fees at the rate of $550/hour and was awarded fees at that requested rate. *See* Doc. 178-1 at 9. For example, in April 2022—during the duration of this case— a judge on the Circuit Court of Cook Country awarded McKinney's counsel fees using a rate of $550/hour. *Id*. at 10. Indeed, McKinney's counsel did not increase his hourly rate until a few weeks before the jury trial. The purpose of a fee award is to compensate an attorney for the work they completed in a way that is fair and comparable to how they would be compensated for completing that same work for a fee-paying client. *See Hensley*, 461 U.S. at 431 ("[P]laintiffs' counsel are entitled to an award of fees for all time reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter.") (internal citations and quotations omitted); *see also Shott v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 338 F.3d 736, 746 (7th Cir. 2003) ("[T]he district court properly awarded prejudgment interest to compensate for the delay in payment."). If McKinney were paying his lawyer, he would have been charged a rate of $550/hour until January 1, 2023. Therefore, for legal work predating McKinney's counsel's rate increase as of January 1, 2023, the Court awards counsel fees at a rate of $550/hour with interest. *See First Nat'l Bank of Chicago v.*

8

*Standard Bank & Trust*, 172 F.3d 472, 480 (7th Cir. 1999) ("Our practice has been to use the prime rate as the benchmark for prejudgment interest unless either there is a statutorily defined rate or the district court engages in 'refined rate-setting' directed at determining a more accurate market rate for interest.").

Because CTA does not dispute the reasonableness of the number of hours expended on the litigation, the "lodestar" calculation is 525.4 hours of work performed through the jury verdict. *See* Doc. 182 at 8 (CTA's response brief states, "[a]t no time has CTA ever argued that Plaintiff's time entries were excessive. . . . Defendant does not complain about the time the Plaintiff's counsel spent throughout the course of litigation in this matter."). Given that McKinney's counsel only requested fees through the jury trial, interest shall be calculated at the prime rate on January 27, 2023. Within fourteen days of this order, the parties shall file a joint status report with a precise calculation of a revised fee award, including a rate of $650/hour work all legal work after January 1, 2023, and $550/hour with interest before January 1, 2023.[3]

### B. Alleged Rule and Order Violations are not a Reason to Reduce Attorney's Fees

Next, CTA alleges that McKinney's counsel should not receive his requested fees due to repeated rule and order violations. In particular, CTA argues that (1) McKinney's counsel publicly disclosed confidential settlement communications in violation of Local Rule 83.5; (2) McKinney's counsel failed to disclose required information under Rule 26(a)(1); and (3) McKinney's counsel violated the Court's *in limine* order by exceeding its scope. The Court addresses each in turn.

#### 1. Settlement Communications

CTA asks the Court to reduce McKinney's fees because McKinney's counsel publicly disclosed confidential settlement discussions in violation of Local Rule 83.5. Specifically,

---

[3] It appears the original request for an award of $342,068.00 in fees included $558.00 in non-taxable expenses, which the Court addresses separately below. *See infra* at 13-14.

McKinney's Fee Petition included the amount that CTA offered to settle the case during confidential settlement proceedings. *See* Doc. 178 at 2. Pursuant to Local Rule 83.5,

> all non-binding alternative dispute resolution ("ADR") proceedings referred or approved by any judicial officer of this court in a case pending before such judicial officer, including any act or statement made by any party, attorney or other participant, shall, in all respects, be privileged and not reported, recorded, placed in evidence, made known to the trial court or jury (without consent of all parties), or construed for any purpose as an admission in the case referred or in any case or proceeding.

L.R. 83.5. However, courts have held that "[s]ubstantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees" because "[a]ttorney's fees accumulated after a party rejects a substantial offer provide minimal benefit to the prevailing party[.]" *Moriarty v. Svec*, 233 F.3d 955, 968 (7th Cir. 2000)): *see also SKF USA Inc. v. Bjerkness*, 2011 WL 4501395, at *2 (N.D. Ill. Sept. 27, 2011) ("[T]he case law on attorneys' fees awards explicitly calls for consideration of the parties' settlement history.").[4] Parties may submit evidence of a settlement offer for a court to determine whether it is substantial. In those cases, there is a possibility that the court will find the offer not substantial, but as a result, settlement numbers are in fact disclosed in a public filing. *See Shott*, 338 F.3d at 743 (finding settlement offer not substantial).[5]

---

[4] The Seventh Circuit has recognized that a plaintiff's "argument based on the Northern District's Rule 83.5 raises an interesting question in light of our cases addressing rejected settlement offers when setting fee awards." *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 675, 688 (7th Cir. 2022) (finding the argument waived and not answering the question on the merits).

[5] Courts nationwide consider settlement history and discussions more broadly in ruling on a fee petition. *See, e.g.*, *A.D. v. California Highway Patrol*, 712 F.3d 446, 460–61 (9th Cir. 2013) ("Federal Rule of Evidence 408 does not bar district courts in the Ninth Circuit from considering amounts discussed in settlement negotiations as evidence of the extent of the plaintiff's success."); *Lohman v. Duryea Borough*, 574 F.3d 163, 169 (3d Cir. 2009) ("[W]e hold only that settlement negotiations may be relevant in measuring success, and, if so, are clearly only one factor to be considered in the award of fees."); *Supinger v. Virginia*, 2019 WL 10947417, at *2 (W.D. Va. Mar. 8, 2019) (holding the court can consider the terms of a settlement agreement in evaluating a fee petition).

The Court recognizes that this is not a case where CTA offered a "substantial settlement offer," which is when "the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party." *Moriarty*, 233 F.3d at 967. Thus, this is not a case where the settlement amount ($20,000) provides any basis to reduce the fee awards. Accordingly, the Court need not wade into the issue of whether Local Rule 83.5 prevented disclosure of the information because it does not affect the court's ruling here. Ultimately, if CTA believed there was an ethical violation because of McKinney's disclosure, the proper remedy was not a request to reduce fees. *See Carter v. Chicago Police Officers*, 1996 WL 446756, at *2 (N.D. Ill. Aug. 1, 1996) ("none of the cases cited by the defendants dictates a denial of fees [where plaintiff's counsel's conduct violated the Illinois Rules of Professional Conduct]."). Rather, CTA could have filed a motion to seal, motion to strike, or motion to redact the relevant portions of McKinney's Fee Petition within days of it being filed, but it did not do so. *See, e.g.*, *Bennett v. Unitek Glob. Servs., LLC*, 2014 WL 1322711, at *6 (N.D. Ill. Apr. 2, 2014) ("Defendants' Motion to Seal is granted to protect the confidential settlement materials included in Defendants' filing[.]").[6] The Court declines to reduce McKinney's fees due to counsel's disclosure.

2. **Alleged Discovery and Trial Violations**

Additionally, CTA alleges that McKinney's counsel failed to disclose required information under Rule 26(a)(1) and violated the Court's *in limine* order by exceeding its scope. Specifically, CTA asserts that at trial, McKinney relied on the medical findings of his therapist and neurologist but failed to provide CTA with their contact information or role in the case. *See* Doc. 182 at 4. In addition, CTA claims that McKinney's counsel allowed McKinney to provide emotional testimony

---

[6] Out of professional courtesy, the Court suggests that counsel in the future notify the opponent in advance or file a motion to the Court for disclosure of communications within the scope of Local Rule 83.5. But again, the absence of that approach here is no reason to reduce fees.

11

about his father's medical condition and death. *Id*. at 5. However, CTA brought these same arguments before the Court in its Rule 59 Motion for a New Trial. *See* Doc. 170 at 17-21. In ruling on the motion, this Court has already concluded that the admission of certain evidence at trial did not merit a new trial. *See* Doc. 188.

Moreover, requests for discovery sanctions should have been brought under Rule 26(g) or Rule 37, not in response to a Fee Petition. *See* Fed. R. Civ. P. 26(g)(3) ("Sanction for Improper Certification"); *see also* Fed. R. Civ. P 37 (various sanctions for discovery violations). The cases CTA relies on do not change this Court's analysis. For example, in *Hadnott v. City of Chicago*, the court concluded that the defendant implicitly admitted violating Rule 26(g) by not disclosing a document earlier. 2015 WL 13598320, at *6 (N.D. Ill. May 22, 2015). As a result, the court determined that a sanction under Rule 26(g) to pay the reasonable expenses caused by the violation was appropriate. *Id*. (*citing* Fed. R. Civ. P. 26(g)). Additionally, in *Colyer v. City of Chicago, Gildardo Sierra*, the court granted Rule 37 fees where a lawyer violated Rule 26(e)'s duty to supplement. 2016 WL 25710, at *14 (N.D. Ill. Jan. 4, 2016). There, the court also ordered a new trial due to the pre-trial misconduct. *Id*. at *22-23; *see also Tucker v. Lally*, 2020 WL 5909070, at *3 (N.D. Ill. Oct. 6, 2020) (requiring a new trial where plaintiff's comments during rebuttal closing violated a ruling *in limine* and did not afford defendants the opportunity to argue against their introduction). In each of these cases, the Court found a discovery or trial violation necessitating fees or a new trial under Rules 26(g), 37, 59, or 60. That is simply not the case here. As such, the Court will not reduce or deny fees requested in the Fee Petition.

### C. Support for Expenses and Costs

Finally, CTA asks this Court to deny McKinney's claimed $6,717.80 in taxable costs in this matter and $558.00 in non-taxable costs. Pursuant to Federal Rule of Civil Procedure 54,

"costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). To overcome the presumption in favor of a grant of costs, the losing party must demonstrate that "there has been some fault, misconduct, default, or action worthy of penalty on the party of the prevailing side." *Delta Air Lines v. Colbert*, 692 F.2d 489, 490 (7th Cir.1982).

With respect to the $6,717.80 in taxable costs, McKinney's counsel submitted a declaration documenting his costs with attached receipts and invoices. *See* Doc. 178-9. Section 1920 provides a list of what costs are taxable pursuant to Rule 54. *See* 28 U.S.C. § 1920. In particular, Section 1920 authorizes a party to recover taxable costs, such as fees for electronically recorded transcripts, docket fees, and fees of the clerk. *Id*. Here, the total of the taxable costs between October 13, 2020 (the first court filing fee) and January 18, 2023 (the court reporter fee for the pre-trial conference transcript) was $6,717.80. *See* Doc. 178-9 at 2. The costs that McKinney's counsel submitted also include the service of process fee, service of deposition subpoenas, and court reporter fees for depositions. *Id*. The invoices attached to the declaration are detailed and specific. *Id*. at 3-16. Therefore, McKinney has substantiated the amount in taxable costs he seeks in the Fee Petition. CTA does not dispute that these costs were incurred. Instead, CTA reiterates that McKinney cannot recover costs due to alleged discovery and trial violations. *See* Doc. 182 at 8. But the Court disagrees. *See supra* at 11-12. Accordingly, the Court awards $6,717.80 in taxable costs.

Concerning the $558.00 in non-taxable costs, CTA asserts that because no receipts were provided for these non-taxable costs, they cannot be verified. As part of an award of attorney's fees, a prevailing party is entitled to seek recovery of various costs that would not otherwise be taxable under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920. *See Heirar v. Crawford County, Wisconsin*, 746 F.2d 1190, 1203 (7th Cir. 1984). As is true with the attorney billing rate and the hours for which compensation is sought, the prevailing party must show that the non-

taxable expenses are reasonable. In this case, McKinney's counsel submitted a declaration attesting to the fact that parking expenses were incurred and describing each of those expenses. *See* Doc. 178 at 14. Indeed, the declaration includes McKinney's counsel's parking by date, description of the event that necessitated parking fees (*e.g.*, deposition, meeting with defense counsel, trial), and cost. *See* Doc. 178-1 at 43. Although receipts were not provided for the parking expenses, these costs were documented on the expense list that McKinney's counsel included and are not unreasonable. *See Rodesky v. Pfister*, 2023 WL 2585856, at *11 (C.D. Ill. Feb. 21, 2023) (finding that parking and mileage expenses included in an expense spreadsheet, which were unsupported by receipts, were reasonable); *Telular Corp. v. Mentor Graphics Corp.*, 2006 WL 1722375, at *10, n.12 (N.D. Ill. June 16, 2006) ("Although receipts were not provided for the parking costs . . those costs were documented on an expense sheet and, furthermore, are not unreasonable."). Moreover, CTA does not allege that these costs are not reasonable. Therefore, the Court awards $558.00 in non-taxable costs.

## CONCLUSION

For the reasons set forth above, the Fee Petition [178] is granted in part and denied in part.

**SO ORDERED.**

Dated: August 10, 2023

_____
Sunil R. Harjani
United States Magistrate Judge